UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ARTHUR NAJERA, | ) |
| Plaintiff, | ) Case No. 18-CV-292 |
| v. | ) Judge Sharon Johnson Coleman |
| GRIFFITH FOODS INTERNATIONAL, INC., | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Arthur Najera filed a Complaint alleging disability discrimination under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*, and retaliation under Title VII, 42 U.S.C. § 2000(e), *et seq.* Najera voluntarily withdrew his Title VII claim on March 29, 2018. Defendant Griffith Foods International, Inc. moves for summary judgment on Najera's ADA claim, arguing that Najera is not a qualified individual with a disability and that he is judicially estopped from pursuing his ADA claim. For the reasons stated herein, this Court grants Griffith's motion for summary judgment [35].

**Background**

The following facts are undisputed. Najera was employed by Griffith as a tote washer from 2008 until 2016. The tote washer job was a heavy physical duty job that required Najera to regularly lift and move up to 50 pounds, push and pull more than 75 pounds, safely operate a forklift, empty garbage dumpsters, walk up and down stairs, bend and stoop, and squat and crouch.

In April 2014, Najera began a leave of absence as a result of various conditions, including a back injury. Griffith Benefits and HRIS Specialist Katherine Maslanka testified that when Najera began his leave that he told her that he could not do his job. Najera testified that at that time, and

still in 2018, he could not perform his required job functions, including lifting up to 50 pounds, pushing and pulling up to 75 pounds, and bending or stooping. Although Najera testified that if Griffith had "accommodated [him], [he] would have done it," he explained that there was no accommodation that would have allowed him to work at Griffith. (Dkt. 43-1 at 11.) Najera elaborated that he was "worse off now than [he] was before," and has made no efforts to find employment since he took leave in April 2014. (*Id.* at 12.)

When Najera first took medical leave some of his time qualified for Griffith's Family and Medical Leave Policy, and he received coverage for six months through the short term disability leave program. After Najera exhausted those leaves, he began a long term disability leave under Griffith's policy. Griffith received a letter in 2016 from the disability insurance carrier stating that Najera was approved for long-term disability through late October 2016. Maslanka testified that during Najera's disability leave, Najera spoke with her and said that he could not work and that there was nothing he could do. Najera did not request any accommodations.

Najera applied for disability insurance benefits with the Social Security Administration ("SSA") in June 2014. Najera was represented by counsel throughout the SSA process and at the hearing Najera testified that he was completely disabled and unable to work at any job. The SSA decision found that as of January 1, 2015, Najera was unable to work at all of his former positions, including his role with Griffith, and is permanently disabled from all employment. Najera receives Supplemental Security Income from SSA for his disability. Maslanka testified that she was unaware of the SSA determination.

Griffith terminated Najera's employment by letter dated August 2, 2016. Maslanka testified that Griffith separated Najera's employment because the long term disability letter indicated that Najera would not be able to perform his required duties or return to work at Griffith in the near term. Maslanka stated that at the time of Najera's leave and termination, Griffith did not have any

2

open or available jobs that Najera was qualified for by way of skills, physical ability, or prior or demonstrated work experience. (Dkt. 37-1 ¶ 6.) Najera is unable to read and write English. Griffith has no jobs at the sedentary exertion level that an employee without written English skills can perform. (*Id.* ¶ 7.) Najera agreed that all jobs at Griffith are "heavy duty work." (Dkt. 43-1 at 12.) Maslanka testified that she was not aware of Najera requesting an accommodation to return to work in 2014 or any time before his termination.

Najera filed a Charge alleging disability discrimination with the Illinois Department of Human Rights on November 22, 2016. Najera subsequently filed the instant lawsuit alleging disability discrimination under the ADA. Griffith moves for summary judgment.

**Legal Standard**

Summary judgment is proper when the pleadings, the discovery materials, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986). A genuine factual dispute exists when there is enough evidence that a reasonable jury could find in favor of the nonmoving party. *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 661 (7th Cir. 2016). In determining whether or not a genuine issue of material fact exists, this Court must view the evidence and draw all inferences in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

**Discussion**

To establish disability discrimination, Najera must prove that he is: (1) disabled within the meaning of the ADA; (2) that he is qualified to perform the essential functions of the job, either with or without a reasonable accommodation; (3) and that he suffered from an adverse employment action because of his disability. *Povey v. City of Jeffersonville, Ind.*, 697 F.3d 619, 622 (7th Cir. 2012). Griffith does not dispute that Najera is disabled under the ADA or that he suffered an adverse

3

employment action. The parties do, however, dispute whether Najera is a qualified individual with a disability. Griffith contends that Najera is not. Najera responds that he was a qualified individual capable of performing the essential functions of his job after going on leave in 2014 and before his termination in 2016.

The ADA forbids discrimination against a "qualified individual on the basis of disability." 42 U.S.C. § 12112(a). A "qualified individual" with a disability is a person who, "with or without reasonable accommodation, can perform the essential functions of the employment position." *Id.* § 12111(8). As such, "reasonable accommodation is expressly limited to those measures that will enable the employee to work." *Severson v. Heartland Woodcraft, Inc.*, 872 F.3d 476, 479 (7th Cir. 2017), cert. denied, 138 S. Ct. 1441, 200 L. Ed. 2d 717 (2018). "An employee who needs long-term medical leave *cannot* work and thus is not a 'qualified individual' under the ADA." *Id.*

Najera took a leave of absence in April 2014 because of injuries that prevented him from doing his job. Najera admitted that he did not request an accommodation because there was no job that he could perform. Thus by Najera's own admissions he is not a qualified individual. *See Weiler v. Household Fin. Corp.*, 101 F.3d 519, 525 (7th Cir. 1996). Moreover, Najera has not looked for other employment since he took leave in April 2014 and now receives disability benefits from the SSA. Griffith terminated Najera's employment in August 2016 because he had been placed on long term disability and there was no longer any indication that he might be able to return to work. Because Najera could not perform the essential functions of his position, he was not a qualified individual under the ADA. *Severson*, 872 F.3d at 479.

Najera's accommodation argument is also misplaced. He has not presented evidence that he requested any sort of accommodation when he took leave or before his separation. To the contrary, Najera told Griffith that he could not work, Najera did not seek an accommodation, and the disability insurance carrier approved Najera for long-term disability through late October 2016.

4

When Griffith terminated Najera's employment in August 2016, Najera had been unable to work for more than two years. It is not the responsibility of Griffith to "guess what actions it should take." *Beck v. Univ. of Wisconsin Bd. of Regents*, 75 F.3d 1130, 1137 (7th Cir. 1996). Where an employer takes action based on the information it possessed, ADA liability does not follow. *Id.*

Griffith further contends that Najera is judicially estopped from pursuing his claim due to the SSA's finding that Najera is disabled and receives Supplemental Security Income. Najera responds that he is not precluded from pursuing his claim because sufficient divergence exists between the definitions of "disability" under the ADA and Social Security Disability.

Judicial estoppel bars a party "from adopting a position in a legal proceeding contrary to a position successfully argued in an earlier legal proceeding." *Johnson v. ExxonMobil Corp.*, 426 F.3d 887, 891 (7th Cir. 2005), as amended (Nov. 21, 2005). Due to the different definitions of disability under the ADA and Social Security Disability, in some circumstances an individual may be disabled for Social Security Disability and still a qualified individual under the ADA. *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 807, 119 S.Ct. 1597, 143 L.Ed.2d 966 (1999). Here, this means that Najera must present sufficient evidence to demonstrate that despite the SSA finding that he was disabled that he could perform the essential funds of his job with or without reasonable accommodation. *Johnson*, 426 F.3d at 891. Najera has not done so.

**Conclusion**

Based on the foregoing, the Court grants Griffith's motion for summary judgment [35] and dismisses Najera's complaint. Civil case terminated.

IT IS SO ORDERED.

Date: 5/21/2019

Entered: _____
SHARON JOHNSON COLEMAN
United States District Court Judge

5